# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### *MIAMI DIVISION*

## Case No. 1:12-cv-23927-SEITZ/SIMONTON

SALUD SERVICES, INC., a Florida corporation,
d/b/a ENDEAVOR BUS LINES; GENTRY
COACH CO., a Tennessee corporation, d/b/a
GENTRY TRAILWAYS; VANDALIA BUS
LINES, INC., an Illinois corporation;
ROADRUNNER CHARTERS, INC., a Texas
corporation; and ECLIPSE CHARTERS &
TOURS, LLC, an Indiana limited liability
company,

          Plaintiffs,

vs.

CATERPILLAR INC., a Delaware corporation,

          Defendant.

_____/

## DEFENDANT'S MOTION AND INCORPORATED MEMORANDUM OF LAW FOR: RECONSIDERATION OF THE COURT'S DECEMBER 13, 2013 DISCOVERY ORDER [DE—129] AND TEMPORARY STAY OF <u>DISCOVERY RELATED SOLELY TO THE C15 ENGINE</u>

Defendant, Caterpillar Inc. ("Caterpillar"), moves pursuant to the Court's December 17,

2013 Order [DE—132] Cancelling Informal Discovery Hearing and permitting Caterpillar to file

a Motion for Reconsideration of the Court's Prior Discovery Ruling [DE—129] based upon

newly discovered facts as a result of an investigation inspired by the Court's ruling on November

22, 2013.  Caterpillar seeks an order that the scope of pre-certification discovery should not

include the EPA 2007 Compliant C15 Heavy Duty On-Highway Engine ("C15 Engine") because

Caterpillar never sold it for use in a bus application.  Caterpillar also seeks a stay in discovery of

any information related solely to the C15 Engine until at least the resolution of this instant

Motion for Reconsideration.  In support thereof, Caterpillar states as follows:

## MATERIAL FACTS

Plaintiffs filed their original suit in this matter in May of 2012.  Plaintiffs served that complaint on Caterpillar on October 10, 2012, and Caterpillar removed it to this Court on October 30, 2012.  Since that time, Plaintiffs have filed three amended complaints and the parties have actively participated in written pre-certification discovery.  Until they filed their third amended complaint on November 15, 2013 [DE—119], the class was clearly defined as individuals who own or lease buses powered by EPA 2007 Compliant C13 bus engines ("C13 Engine").  Just after their second amended complaint was dismissed in mid-October 2013, however, Plaintiffs indicated verbally for the first time that they believed the scope of discovery served to date should have included the C15 Engine.  Caterpillar declined at the time to voluntarily expand the scope of pre-certification discovery to include the C15 Engine because (i) it was not part of the class definition in the Second Amended Complaint or any prior complaint, and (ii) the document requests served up until that time specifically requested C13 Engine information only.

Shortly after those discussions, but before Plaintiffs filed their third amended complaint, Plaintiffs served a Fourth Request for Production on October 28, 2013, which was the first formal request for discovery related to the C15 Engine.  On November 22, 2013, Plaintiffs filed their Fifth Request for Production.  The fifth set contains an additional 62 requests seeking documents related to the C15 Engine nearly identical to those previously sought over the last year, which were expressly focused on the C13 Engine.

While the parties were negotiating how to deal with Plaintiffs' effort to expand class-certification discovery to include the C15 Engine even though it is not part of the class, Plaintiffs filed their third amended complaint.  To obviate the need to address whether the C15 Engine was within the scope of pre-certification discovery, Plaintiffs brought the new class-action complaint on behalf of individuals who own or lease buses with EPA 2007 Compliant C13 *or C15 engines*. This allegation has no evidentiary basis because Caterpillar did not sell any C15 Engines to bus manufacturers for use in a bus application, which leads Caterpillar to conclude that there are *no class members who own or lease any buses equipped with that engine*.  *See* Declaration of Robert Niemeier, Caterpillar's Manager of Litigation Technical Support, which is attached to this motion as **Exhibit A**, at ¶¶4–6.  Indeed, Plaintiffs have identified no C15 engines owned or leased by *any* of the putative class members and have acknowledged verbally that they do not intend to allege that the class includes any buses equipped with a C15 engine.

Since the November 22, 2013 hearing where this issue was discussed, the Parties have exchanged correspondence as part of Caterpillar's effort to clarify what is, at best, an ambiguity in Plaintiffs' class allegations.  *See, e.g.*, correspondence between counsel dated November 29, 2013, December 2, 2013, December 9, 2013, December 12, 2013 and December 16, 2013, which are attached as **Composite Exhibit B**.[1]  At a telephonic meet and confer conducted on the afternoon of December 11, 2013, Plaintiffs agreed that the C15 Engine was not a bus engine, and clarified that its class allegations were not intended to include the C15 engine.  Plaintiffs' claimed motivation for including any mention of the C15 was to make a case that the

---

[1]    In this correspondence, Caterpillar also explained to Plaintiffs that if the pre-certification discovery issues related to the C15 engine cannot be worked out, Caterpillar would need additional time to produce documents related to the C15 beyond the December 18, 2013 due date.  Despite the Court's encouragement, Plaintiffs would not agree to or even discuss an agreed extension of time to respond within the deadlines set by the Court in the most recent scheduling order issued on November 21, 2013 [DE—124].  *See* DE—129, p. 4 ("the Parties could agree amongst themselves to extend the response time to discovery requests so long as any agreement did not run afoul of the deadlines set by the Court in the most recent scheduling order issued on November 21, 2013 [DE—124]").

Sedgwick LLP
Attorneys For Caterpillar Inc.

aftertreatment systems used on these two different engines was "materially identical."  This position is consistent with Plaintiffs' Expert Witness Identification [DE—107].

In that disclosure, Mr. Hannemann makes clear that his anticipated class certification opinions will be that "[e]ach Plaintiff has experienced CRS faults that are typical of the same defective systems in the *C-13 engine*."  *Id*., ¶I (emphasis added).  To be sure, there is no mention of the C15 Engine in this disclosure, which makes sense since none of the putative class members own or lease any buses powered by that engine.  *See* DE—107; *see also* Niemeier Declaration, **Exhibit A**, at ¶¶4–6.

Plaintiffs would not agree to remedy the supposed ambiguity in their class allegations, not even to file a proposed amendment by interlineation that Caterpillar drafted for them.  Thus, the apparent motivation for making this allegation was to expand pre-certification discovery to include the C15 Engine even though documents related to that engine will not make any of the factors for pre-certification[2] more or less likely for the purpose of determining whether this matter is proper as a class action.

Given that there are no buses powered by C15 Engines, and the C15 Engine cannot therefore be a part of Plaintiffs' putative class, Caterpillar requests this Court to reconsider its order [DE—129] allowing pre-certification discovery on C15 Engines and requests that this Court stay any C15 discovery during the pendency of this motion.

---

2.       These factors include commonality, typicality, adequacy and numerosity.  Fed.R.Civ.P. 23(a).

SEDGWICK LLP
ATTORNEYS FOR CATERPILLAR INC.

## ARGUMENT

**I.**   **THIS COURT SHOULD RECONSIDER ITS DISCOVERY ORDER BECAUSE INFORMATION GATHERED SINCE THE NOVEMBER 22, 2013 HEARING CONFIRMS THERE ARE NO BUSES POWERED BY C15 ENGINES IS MISLEADING**

The "purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Burger King Corp. v. Ashland Equities, Inc.,* 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002). There are three grounds for reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. *Id.* Here, Caterpillar seeks reconsideration based on newly discovered facts.

In its Order Following Informal Discovery Hearing, this Court ruled that the scope of class discovery may include C15 engines. DE—129 at p. 5. This Court's provided:

> At the hearing, after hearing argument from both Parties, the Court noted that subsequent to the Notice of Hearing being filed, the Plaintiffs filed their Third Amended Class Action Complaint wherein both the Defendant's C-13 and C-15 engine were identified as being the subject of the Plaintiffs' claims (DE # 119). The undersigned further noted that the Plaintiffs filed their Third Amended Complaint on November 15, 2013, which was the deadline for the Plaintiffs to file that Complaint pursuant to the Court's Order which dismissed the Plaintiffs' Second Amended Complaint (DE # 110). **Thus, the undersigned concluded that because the C-15 engine was part of the now-operative Complaint, the Plaintiffs were entitled to discovery related to that engine.** The undersigned made clear, however, that she *expressed no opinion as to whether the C-15 engine should be included in the class allegations*, but rather only opined that the operative complaint contained allegations related to that engine thereby rendering the Plaintiffs' requests for discovery related to that engine relevant.

DE—129 at p. 2-3 (emphasis added). As can be seen from the above, the Court's ruling was premised on allegations in the third amended complaint that Plaintiffs purchased C15 powered buses. *See* DE—119 at p. 1 & ¶¶ 61, 62, 62(a) - (e). After the Court's Order following the November 22, 2013 informal discovery hearing [DE—129], Caterpillar conducted a thorough investigation confirming that it did not sell any C15 Engines for use in a bus application. *See*

Niemeier Declaration, **Exhibit A,** ¶4.  As part of the meet and confer process, counsel for Caterpillar discussed this finding with counsel for Plaintiffs on the afternoon of December 11, 2013.  At that time, Plaintiffs confirmed that they did not intend to allege that the C15 was used in a bus application or that the class included owners or lessors of buses powered by the C15. Instead, the class is comprised of only owners and lessors of buses powered by C13 Engines, and the purpose behind mentioning the C15 Engine was to emphasize Plaintiffs' contention that it is "materially identical" to the C13 Engine.[3]  Therefore, contrary to the apparently misleading class allegations in the third amended complaint, there are no putative class members that own or lease buses powered by C15 Engines.  Caterpillar discusses below why discovery directed to the C15 Engine is not appropriate during the pre-certification stage of bifurcated discovery.  *See* this Court's most recent scheduling orders [DE—117, DE—124] (bifurcating discovery and limiting its scope to pre-certification issues until May 2, 2014).

## II.   DOCUMENTS RELATED SOLELY TO C15 ENGINE BEYOND SCOPE OF PRE-CERTIFICATION DISCOVERY

### A.   *The Scope of Pre-Certification Discovery is Limited to That Which Is Relevant to the Determination of the Requirements of Rule 23 of the Federal Rules of Civil Procedure.*

Rule 23 of the Federal Rules for Civil Procedure governs the certification of class action lawsuits.  In applying the Rule 23 criteria to determine if pre-certification is appropriate, the court must examine the elements of the parties' substantive claims and defenses in order to analyze commonality, typicality, adequacy and numerosity of representation under Rule 23(a) and maintainability under Rule 23(b).  MANUAL FOR COMPLEX LITIGATION (4th) §21.14.  While courts have acknowledged that some preliminary merits-based inquiry may be required during the pre-certification phase in order to determine whether the claims and defenses can be

---

3.     While Caterpillar disagree that the engines' aftertreatment regeneration systems are materially identical, this debate is appropriate during the merits stage of this litigation, if ever.

presented and resolved on a class-wide basis, discovery related *only to the merits* delays the certification process, may ultimately be unnecessary, and can create extraordinary and unnecessary expense and burden.  *Id.*

Discovery permitted during the pre-certification stage "must be sufficiently broad in order that the plaintiffs have a realistic opportunity to meet these [Rule 23] requirements; at the same time, the defendant must be protected from discovery which is overly burdensome [or] irrelevant."  *National Organization for Women, Farmington Valley Chapter v. Sperry Rand Corp.*, 88 F.R.D. 272, 277 (D. Conn. 1980).  In so keeping, "discovery is not to be used as a weapon" and discovery on the merits should not be completed before the pre-certification.  *Id.*

While there is not always a bright line between discovery into certification issues and discovery into merits issues, certification discovery generally pertains to the requirements of Rule 23 and tests whether the claims and defenses are subject to class-wide proof, while merits discovery pertains to the strength and weaknesses of the claims or defenses and tests whether they are likely to succeed.  NEWBERG ON CLASS ACTIONS, § 7:17 (5th Ed.) (2013).  Indeed, the Advisory Committee commented on this in its notes to the 2003 Amendments to Rule 23:

> Although an evaluation of the probable outcome on the merits is not properly part of the certification decision, discovery in aid of the certification decision often includes information required to identify the nature of the issues that actually will be presented at trial. **In this sense it is appropriate to conduct controlled discovery into the "merits," limited to those aspects relevant to making the certification decision on an informed basis.** Active judicial supervision may be required to achieve the most effective balance that expedites an informed certification determination without forcing an artificial and ultimately wasteful division between "certification discovery" and "merits discovery."

F.R.C.P. 23(c)(1) advisory committee's note (2003)(emphasis added).

Historically, certification related discovery has been driven by the Supreme Court's holding in 1974 that "nothing in either the language or history in Rule 23 . . . gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177, 94 S. Ct. 2140, 2152, (1974).  In 2011, the Supreme Court explained that *Eisen* did not preclude any merits discovery during the precertification phase, but held that a court's class-certification analysis must be "rigorous" and "may entail some overlap with the merits," thus courts could consider the merits *if necessary* to ascertain whether the prerequisites of Rule 23 have been satisfied.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); NEWBERG, §7:17.  The issue was revisited this year when the Court clarified *Wal-Mart* and stated the current status of the law in holding:

> Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.  Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013).  From *Eisen* to *Amgen*, the Supreme Court has made clear that merits inquiry having no relevance or bearing on the determination of a Rule 23 requirement should not be considered in the certification stage.

**B.** ***Discovery Related to the C15 Engine, if Relevant to the Case at All, is Purely Merits-Based and is Not Appropriate During the Pre-Certification Phase.***

Here, Plaintiffs seek overly burdensome discovery that is irrelevant to pre-certification issues regarding the Caterpillar C15 Engine. As discussed, Plaintiffs seek to certify a class of "**bus** owners and lessees" who purchased or leased a **bus** "containing a MY2007 CAT engine." *See* third amended complaint, ¶62. (Emphasis added). Plaintiff has defined "MY2007 CAT engine" as used in the third amended complaint to be a "2007, 2008, or 2009 ("2007-9") Caterpillar, Inc. [sic.] C-13 **or C-15** heavy duty on-highway diesel engine." *See id.*, pp. 1–2. Caterpillar has shown via declaration that there are no C15 engines for bus applications. Plaintiffs' counsel has candidly admitted that, contrary to the plain language of their third amended complaint, Plaintiffs do not intend to allege that there are any C15 engines in any of the class representatives' buses nor in any members of the putative class's buses. Plaintiffs explained that their intent was merely to allege that the aftertreament system used in the C13 engines powering the class members' buses is substantially similar to the aftertreatment system used in the C15 **truck** engine. Plaintiffs' clarification highlights the spurious nature of the definition of "MY2007 CAT engine" chosen for the third amended complaint, and verifies that **there are no buses with C15 engines at issue in this lawsuit**.

Plaintiffs' disingenuous definition of "MY2007 CAT engine" in the third amended complaint does nothing to bring the C15 Engine into the scope of discovery such that it would aid the Court in determining any of the requirements of Rule 23 in this pre-certification stage. Where Plaintiffs' counsel admits that there are no C15 Engines in any of the buses that would be the subject of this lawsuit, discovery related to the C15 Engine could not weigh into account for the determination as to whether "common questions of law or fact common to class members predominate over any questions affecting only individual class members." Fed.R.Civ.P.

9

23(b)(3).  If discovery of evidence related to the C15 is relevant to this case at all, it would go to the *answer* to these types of questions,[4] falling squarely into the category of merits discovery not related to determining Rule 23 criteria, and thus, under *Amgen*, is not appropriate at this pre-certification stage of the case.

*Amgen* makes clear that it is the existence and predominance of common *questions* that should concern the court at the pre-certification phase—evidence related to the *answers* to such questions is merits-based and has no place in pre-certification discovery.  *Id.* at 1195 ("the focus of Rule 23(b)(3) is on the predominance of common *questions*") (emphasis in the original); *see also Rodriguez v. Banco Central*, 102 F.R.D. 897, 903 (D.P.R. 1984) ("to best serve the ends of fairness and efficiency, the Court may direct the parties to focus their initial discovery on matters pertaining to class *questions.*") (emphasis added).  Here, Plaintiffs make no showing how discovery related to an engine (the C15 Engine) that their counsel admits is not in any of the buses to be included in the class can assist the Court in determining whether common questions predominate such to warrant class certification.

---

4       Plaintiffs recently identified certain documents and statements that lead Caterpillar to conclude that Plaintiffs intend to argue that the C15 is substantially similar to the C13 such that discovery of documents related to the C15 may be relevant to the resolution of the allegations in the third amended complaint.  Caterpillar does not agree that the engines are substantially similar, but even if the Court were to determine at some point that they are, discovery of related models or products that are not at issue in the lawsuit is well established to only be relevant to notice or causation.  *United Oil Co., Inc. v. Parts Assoc., Inc.*, 227 F.R.D. 404, 411 (D. Md. 2005).  Both of these elements are are *answers* to questions posed by a lawsuit, and are entirely merits-based.  They have no bearing on class certification.

SEDGWICK LLP
ATTORNEYS FOR CATERPILLAR INC.

Between the C13 and the C15, only the C13 Engine is incorporated into the at-issue (or any) buses.  Further, Caterpillar has, at great time and expense,[5] painstakingly produced the equivalent of hundreds of thousands of documents related to the C13 Engine.  Plaintiffs' demand that Caterpillar now undertake in responding to such voluminous and time consuming discovery at a cost likely to exceed $150,000 during the pre-certification stage for *another engine* – one that is by Plaintiffs' agreement not part of the putative class in this lawsuit – is unreasonable and unsupported by law.  *See National Organization for Women,* 88 F.R.D. at 277 ("To spend either three million or three hundred thousand dollars, in order to move a mountain of documents and statistics from the defendant's facilities to the plaintiffs' offices, would be, in this pre-certification context, a wasteful and unjustifiable action.").  It is precisely this type of abusive discovery practice in the pre-certification phase that the law has developed to prevent.

Based on Caterpillar's investigation into the accuracy of Plaintiffs' class-allegations in the third amended complaint on which the Court based its December 13, 2013 order, Caterpillar respectfully requests that the Court reconsider its ruling that the C15 is included in the scope of the pre-certification discovery.[6]  Plaintiffs have admitted and Caterpillar has confirmed through internal investigation that there are no buses in the class with C15 engines.  Because this indicates that no C15 discovery would assist the Court in resolving the question of commonality or any other Rule 23 requirement, Caterpillar respectfully requests that the Court enter an order excluding the C15 from the scope of pre-certification stage of bifurcated discovery.

---

5.       In responding to the third set of requests to produce alone, Caterpillar's efforts took 136 days and roughly 1000 work hours, at a cost of over a quarter million dollars.  *See* Declaration of Patrick Chavez, Caterpillar's Discovery Liaison, which is attached to this motion as **Exhibit C,** ¶¶15, 19.

6.       As noted by the Court in its December 13, 2013 Order following an informal discovery hearing [DE—129], Plaintiffs' notice of hearing relating to the discoverability of materials concerning the C15 [DE—119] was filed *prior* to Plaintiffs' third amended complaint.  Accordingly, the scope of pre-certification discovery pursuant to the third amended complaint was not set for hearing; rather, the hearing was intended to focus on whether Caterpillar's already-served responses at the time should have included materials and information related to C15 Engines.

### III.  DISCOVERY RELATED SOLELY TO THE C15 ENGINE SHOULD BE STAYED PENDING RESOLUTION OF THIS MOTION FOR RECONSIDERATION

This Court has broad discretion to control discovery. *Phipps v. Blakeney,* 8 F.3d 788, 790 (11th Cir. 1993).  This discretion extends to control over the timing of discovery to protect a party from annoyance, oppression, or undue burden or expense.  *Solar Star Sys., LLC v. BellSouth Telecomm., Inc.*, No. 10-21105-CIV, 2011 WL 1226119, at *1 (S.D. Fla. Mar. 30, 2011). This also includes the discretion to stay discovery under appropriate circumstances.  In deciding whether to stay discovery pending resolution of a pending motion, the Court must balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery. *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997).  This involves weighing the likely costs and burdens of proceeding with discovery.  *Id.*  To make this analysis a court may "take a preliminary peek at the merits of the allegedly dispositive motion to see if on its face there appears to be an immediate and clear possibility that it will be granted." *Id.*

This Court ordered Caterpillar to respond to the Fourth Request for Production, which was deemed served on November 15, 2013, on or before December 18, 2013.  DE—129 at p. 5. Caterpillar timely responded to the Fourth Request for Production on December 18, 2013 by producing over 1,000 responsive Bates numbered documents related to the C13.[7]  Caterpillar, however, requests that this Court stay discovery related to C15 engines in the Fourth and Fifth Requests for Production until this Court reconsiders its prior ruling that C15 class discovery is relevant.[8]  As argued above, C15 Engines are not relevant to class certification issues. Documents and information concerning those engines are only relevant, if at all, to merits

---

[7].    Many of these Bates numbered materials are native documents, which only receive one Bates number despite being the equivalent of many printed pages.

[8].    For the Court's reference, Caterpillar attaches copies of the fourth and fifth sets of requests for production to this motion as **Composite Exhibit D**.

SEDGWICK LLP
ATTORNEYS FOR CATERPILLAR INC.

discovery, which has been stayed by this Court.  Accordingly, this Court's ruling may obviate entirely the need for this discovery at this stage of the litigation.  *Cf. Rich v. City of Jacksonville*, No. 3:09-cv-454-J-34MCR, 2010 WL 1141556, at *1 (M.D. Fla. Mar. 23, 2010).

Moreover, as detailed in the Declaration of Caterpillar's discovery liaison, responding to this discovery will be very costly and burdensome to Caterpillar.  *See* Chavez Declaration, **Exhibit C**, ¶¶9–19.  On the other hand, the resulting harm to the Plaintiffs if a stay is granted will be minimal.  Plaintiffs waited to formally inject C15 Engines into this litigation until they filed their third amended complaint on November 15, 2013, after the parties nearly completed over a year of written discovery on the C13 Engine only.  Similarly, there is no mention of the C15 in Plaintiffs' expert disclosure.  *See* DE—107.  These circumstances make clear that documents related to the C15 Engine will do *nothing* to make it more or less likely that common issues prevail over individual ones among a class of owners or lessors of buses powered by C13 Engines.  Accordingly, there can be no prejudice to Plaintiffs by staying this voluminous production until at least this motion is resolved (and more likely for debate during merits discovery).  Alternatively, should Caterpillar be required to provide this at-issue discovery during the pre-certification, it will be impossible for Caterpillar to respond in less that 60 to 75 days for the reasons stated in the declaration of Caterpillar's discovery liaison.  *See* **Exhibit C**, ¶¶9, 18.

<u>**CONCLUSION**</u>

Based on the foregoing, Caterpillar respectfully requests (i) reconsideration of this Court's December 13, 2013 order following an informal discovery hearing [DE—129], and (ii) a determination that discovery related to the C15 – an engine that does not power any buses owned or leased by putative class members – is not appropriate during the per-certification stage of bifurcated discovery. Further, Caterpillar requests entry of an order staying discovery related solely to the C15 Engine pending resolution of this motion. Alternatively, should the Court deem discovery related *only* to the C15 appropriate during the pre-certification stage, Caterpillar requests 75 days from the date of that order to serve responsive documents.

**WHEREFORE** Caterpillar requests entry of an Order (i) reconsidering the Court's December 13, 2013 Order following an informal discovery hearing [DE—129], (ii) deeming documents and information related *solely* to the EPA 2007 Compliant C15 engine beyond the scope of pre-certification discovery, (iii) staying discovery related solely to the EPA 2007 Compliant C15 engine *at least* until this motion is resolved, and (iv) awarding Caterpillar any other relief deemed appropriate.

**REQUEST FOR HEARING PURSUANT TO LOCAL RULE 7.1(b)(2)**: Caterpillar requests a twenty minute hearing on this motion for reconsideration. Caterpillar desires a hearing, which will be beneficial to the Court, because the issues to be determined regarding the scope of discovery are fact intensive.

SEDGWICK LLP
ATTORNEYS FOR CATERPILLAR INC.

**GOOD FAITH CONFERENCE PURSUANT TO LOCAL RULE 7.1(a)(3)**:  Prior to filing this motion, counsel for Caterpillar conferred with counsel for Plaintiffs in a good faith effort to resolve or limit the issues discussed above.  Plaintiffs agreed that they did not intend to allege that there are any buses powered by the C15 or that the class is comprised of owners or lessors of buses powered by C15 engines.  But they refused to withdraw their discovery requests related to the C15 Engine during the pre-certification stage of bifurcated discovery or work with Caterpillar to adjust the deadlines appropriately.

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished on December <u>18th</u>, 2013 via electronic transmission and the CM/ECF system to all parties listed on the attached Service List.

Respectfully submitted,

**SEDGWICK LLP**

By: ____/s/ Kimberly Cook_____
    KIMBERLY COOK
    Florida Bar No. 0714320
    kimberly.cook@sedgwicklaw.com
    9155 S. Dadeland Blvd., Ste 1208
    Miami, FL  33156-2737
    Ph-305/436-3682; fx-305/671-2159
and
    JAMES H. KEALE (*Pro Hac Vice*)
    New Jersey Bar No. 23771983
    james.keale@sedgwicklaw.com
    Three Gateway Center, 12th Flr.
    Newark, NJ  07102
    Ph-973/242-0002; fx-973/242-8099

and
    DAVID J. DEPIANO
    Florida Bar No. 0055699
    david.depiano@sedgwicklaw.com

15

2400 E. Commercial Blvd., Ste. 1100
Ft. Lauderdale, FL  33308
Ph-954/958-2500; fx-954/958-2513

## SERVICE LIST

*Salud Services, Inc., et al. v. Caterpillar*

USDC, S.D. Fla. District, Miami Division Case No. 1:12-23927-CIV-SEITZ/SIMONTON

| | |
|---|---|
| THEODORE J. LEOPOLD, ESQ.<br>LESLIE M. KROEGER, ESQ.<br>LEOPOLD LAW, P.A.<br>2925 PGA Blvd., Ste. 200<br>Palm Beach Gardens, FL  33410<br>Telephone:  (561) 515-1400<br>Facsimile:  (561) 515-1401<br>Email:  tleopold@leopold-law.com<br>lkroeger@leopold-law.com<br>Attorney for Plaintiffs | KEVIN T. HOERNER, ESQ.<br>BECKER, PAULSON, HOERNER &<br>THOMPSON, P.C.<br>5111 W. Main St.<br>Belleville, IL  62226<br>Telephone:  (618) 235-0020<br>Facsimile:  (618) 235-8558<br>Email:  KTH@bphtlaw.com<br>Co-Counsel for Plaintiffs |
| SCOTT GEORGE, ESQ.<br>JONATHAN SHUB, ESQ.<br>SEEGER WEISS LLP<br>1515 Market St., Ste. 1380<br>Philadelphia, PA  19102<br>Telephone:  (215) 553-7980<br>Facsimile:  (215) 851-8029<br>Email:  SGeorge@SeegerWeiss.com;<br>JShub@SeegerWeiss.com<br>Co-Counsel for Plaintiffs | MARK S. FISTOS, ESQ.<br>STEVEN R. JAFFE, ESQ.<br>SETH M. LEHRMAN, ESQ.<br>FARMER, JAFFE, WEISSING, EDWARDS,<br>FISTOS & LEHRMAN, P.L.<br>425 N. Andrews Ave., Ste. Two<br>Ft. Lauderdale, FL  33301<br>Telephone:  (954) 524-2820<br>Facsimile:  (954) 524-2822<br>        Email:  Mark@pathtojustice.com;<br>        SJaffe@pathtojustice.com;<br>        Seth@pathtojustice.com<br>Co-Counsel for Plaintiffs |
| RICHARD J. BURKE, ESQ.<br>COMPLEX LITIGATION GROUP LLC<br>1010 Market St., Ste. 1340<br>St. Louis, MO  63101<br>Telephone:  (314) 880-7000<br>Facsimile:  (314) 220-7777<br>Email:  Rich@complexlitgroup.com<br>Co-Counsel for Plaintiffs | SCOTT R. SHEPHERD, ESQ.<br>NATHAN C. ZIPPERIAN, ESQ.<br>SHEPHERD, FINKELMAN, MILLER &<br>SHAH, LLP<br>1650 Town Center Circle, Ste. 216<br>Weston, FL  33326<br>Telephone:  (954) 515-0123<br>Facsimile:  (954) 515-0124<br>Email:  sshepherd@sfmslaw.com'<br>nzipperian@sfmslaw.com<br>Co-Counsel for Plaintiffs |

SEDGWICK LLP
ATTORNEYS FOR CATERPILLAR INC.