UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 1:12-cv-23927-SEITZ/SIMONTON

SALUD SERVICES, INC., a Florida corporation, d/b/a ENDEAVOR BUS LINES; READY BUS LINE, a Minnesota corporation; GENTRY COACH COMPANY, a Tennessee corporation, d/b/a GENTRY TRAILWAYS; VANDALIA BUS LINES, INC., an Illinois corporation; ROADRUNNER CHARTERS, INC., a Texas corporation; and ECLIPSE CHARTERS & TOURS, LLC, an Indiana limited liability company,

     Plaintiffs,

vs.

CATERPILLAR, INC., a Delaware corporation,

     Defendant.
_____/

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION OF COURT'S DECEMBER 13, 2013 DISCOVERY ORDER AND MOTION FOR ORDER STAYING DEFENDANT'S SUPPLEMENTAL DISCOVERY AND REQUEST TO ADMIT**

  Defendant argues that the Court should reconsider its order of December 13, 2013 (Doc. No. 132) because of newly discovered evidence. The disputed issue is Plaintiffs' request for production of documents relating to a C15 engine manufactured by Defendant. The context involves Plaintiffs' suit for breach of warranties regarding the Caterpillar Regeneration System (CRS) which CAT put in all its heavy duty diesel engines ("HDDE") to meet the 2007 EPA emission standards. CAT manufactures a number of different sized (and horsepower) HDDE for on-highway (as opposed to off-highway) use. The engines are put into vehicles manufactured and sold by other vehicle manufacturers, such as Peterbuilt, Kenworth, and Van Hool. These on-highway vehicles include trucks and buses. CAT designed and manufactured an exhaust

1

emissions control system referred to by CAT as its proprietary 2007 ACERT Technology necessary for the engine exhaust to meet the 2007 EPA Standard[1] for all heavy duty diesel on-highway engines. The exhaust emission control systems lower the pollutant content of the diesel engine identically in all CAT C13 and C15 diesel engines for which the 2007 EPA standard is applicable (Model Year, MY2007 and later C13 and C15 on-highway diesel engines) regardless of the size and horsepower of the heavy duty diesel engine used in the vehicle. The terms C13 and C15 designate the size, i.e., 13 liter and 15 liter, of the diesel engine itself, not the size of the exhaust emissions control systems that reduce pollutants from the exhausts of those engines. CAT designed, patented, and manufactured the exhaust emissions controls irrespective of the engine to which they are attached. In addition, the Clean Air Act and the attendant EPA regulations require that the emissions controls employed in all heavy duty, on-highway diesel engines have an express Federal Emissions Warranty covering the various components that comprise the entire exhaust emissions control system. The Federal Emissions Control Warranty provides: "New Heavy Duty engines Powering On-Highway Vehicles-MY2007 and later C13 and C15: Caterpillar Inc. warrants to the initial and subsequent owner of a C13 or C15 diesel engine (powering an on-highway truck)."

As demonstrated by the attached affidavit of Neil Hannemann, all the CAT exhaust emissions controls used on CAT heavy duty heavy duty diesel engines are "materially identical" and that representation is well supported by the CAT documents produced. (Exhibit 1). In addition, Plaintiffs have provided their Rule 26 Expert Report from Mr. Hannemann that the C13 and C15 have a common defect in the 2007 ACERT exhaust emissions control warranted by CAT.

---

[1] 40 CFR PART 86, Section 86.007-11.

Plaintiff has sought discovery on the emissions controls designed and employed by CAT in both C13 and C15. Plaintiffs' expert's analysis indicates that:

- The emissions control systems developed by CAT to meet the 2007 EPA Standard is identical in both the CAT C13 and C15 HDDE engines;
- That there is no difference in the operation of CAT's exhaust emissions controls based upon the type of vehicle.
- The CAT exhaust emission controls are referred to by CAT as its 2007 ACERT Technology and the Caterpillar Regeneration System;
- The 2007 ACERT and its CRS are defective in design, material and workmanship in breach of the Federal Emission Control warranty; and
- CAT's response to the defects in the 2007 ACERT and the CRS have been the same for both the C13 and C15 engine.

In addition, in response to Plaintiffs' Third Request for Production, CAT has produced hundreds of documents that have redacted information pertaining to the C15 engines, establishing that CAT is not prejudiced by the discovery sought relating to C15 engines as they can easily remove their redactions.

**ARGUMENT**

Defendant claims that it brings its Motion for Reconsideration based upon the newly discovered fact that its C15 engine was "never sold [] for use in a bus application." CAT's argument fails because: 1) CAT cannot credibly represent that the fact it claims to be "newly discovered" was not actually known by CAT as early as 2007 when it first sold both the C15 and C13 engines; 2) the matter for reconsideration is whether information on an identical emissions control system used by CAT in the C15 engines is discoverable[2] under FRCP 26, not whether Plaintiffs are typical under FRCP 23 because their busses had C13 as opposed to C15 engines; and 3) Cat has propounded Rule 34 Second Supplemental Requests For Production, Rule 36

---

[2] The Parties are engaged in pre-certification discovery, as opposed to merits discovery. As the Court is aware, Supreme Court precedent of recent vintage requires rigorous analysis of Rule 23 requirements, particularly commonality, and predominance. To this end, common defects under the Federal Emission Control Warranty are likely to be the subject significant discussion and disagreement between the Parties.

Request To Admit, and Rule 33 Second Supplemental Interrogatories, all seeking discovery from Plaintiffs on the C15 engines, discovery which Plaintiffs must, and can only, obtain from Defendant.

**1. There Is No Newly Discovered Evidence To Support Defendant's Request For Reconsideration.**

CAT does not argue that the reconsideration of the Court's prior discovery ruling is necessary "to correct clear error or prevent manifest injustice", but rather "the availability of new evidence." (D.E. 133, p. 5). CAT claims that the Court's order "was premised on allegations in the third amended complaint that Plaintiffs purchased C15 powered engines." *Id*. However, the Court's ruling does not state any such premise. To the contrary, the ruling states:

> "Thus the undersigned concluded that because the C15 engines was part of the now operative Complaint, the Plaintiffs were entitled to discovery related to that engine…the undersigned expresses no opinion as to whether the C15 engine should be included in the class allegations, but rather only opined that the operative complaint contained allegations related to that engine thereby rendering Plaintiffs request for discovery related to that engine relevant."

Clearly, issues pertaining to Rule 23 class certification were expressly not decided by the Court. Without question, the Third Amended Complaint makes numerous references to the C15 engines far beyond whether or not they were used to power buses, or were purchased by the Plaintiffs. See TAC, ¶¶ 23-45 "CATERPILLAR'S EXHAUST EMISSIONS (AFTERTREATMENT) CONTROL SYSTEM"; ¶ 69, "COMMONALITY"; ¶¶ 75-80 "CLASS ACTION REQUIREMENT"; ¶¶ 81-92 "BREACH OF EXPRESS EMISSION CONTROL WARRANTY".

Defendant attaches the Robert Niemeier Declaration, Ex. A. for the representation that "Caterpillar did not sell EPA 2007 compliant C15 engines to any bus manufacturers for use in bus applications." Absent from Mr. Niemeier's Declaration is that Caterpillar did not know this

4

before November 2013. Defendant, in fact, knew to whom it sold its C15 engines when it sold them.

**2. The Matter For Reconsideration Is One Of Discovery Under Rule 26, Not Class Certification Under Rule 23.**

Defendant, in spite of failing to establish any "newly discovered" evidence to support reconsideration, proceeds to explain "why discovery directed to the C15 Engine is not appropriate during pre-certification stage of bifurcated discovery." *Id*., p. 6. Defendant asserts that "merits inquiry [has] no relevance or bearing on the determination of a Rule 23 requirement". Apart from acknowledging the significant constriction of *Eisen*, Defendant provides no support for the discovery limitations with respect to this evidence or the class requirements of this case. Plaintiffs' Third Amended Complaint defines the CAT engines subject to the litigation as "2007, 2008 or 2009 ('2007-9) Caterpillar, Inc. C-13 or C-15 heavy duty on-highway diesel engine (collectively 'MY2007 CAT Engine') containing exhaust emission controls to reduce diesel engine exhaust emissions in compliance with the EPA's 2007 Heavy Duty On Highway Emissions Standard.". TAC, Preamble. And that CAT designed, equipped, sold and warranted those engines. TAC, ¶¶ 1, 23-47. With respect to the Rule 23 requirements Plaintiffs have alleged the following common questions (TAC, ¶ 70):

  a. Whether MY2007 CAT Engines are defective;

  b. Whether Defendant manufactured, warranted, distributed, delivered, supplied, inspected, marketed, leased, and/or sold MY2007 CAT Engines with CRS exhaust emission controls that, as a matter of course, experienced or caused repeated instances of engine derating, aftertreatment regeneration devices plugging, the ARD head failing and/or clogging, as well as other CRS failures that prevented the engines from properly functioning;

  c. Whether Defendant breached its express Emissions Warranty;

  d. Whether Defendant breached its implied warranties;

    e. Whether the Defendant's CRS exhaust emission control was defective, which defect could not be corrected by the replacement of parts or components, or the employment of reasonable and customary labor;

    f. Whether limitation of the Emissions Warranty to repair and replacement, in the presence of repeated CRS failures, which have not been and cannot be corrected by CAT, causes the emissions warranty to fail of its essential purpose.

Expressly, Plaintiffs allege "whether MY2007 CAT Engine's exhaust emission control, the CRS, is inherently defective – causing repeated instances of check engine lights illuminating, engine derating, aftertreatment regeneration devices plugging and/or clogging, as well as other issues that prevented the engines from properly regenerating". Id. ¶ 76. As indicated, the Defendant's uniform exhaust emission controls are identical in both the C13 and C15 engines; and that Plaintiff alleges a breach of the Federal Emission Control Warranty both respect to design and materials and workmanship. To establish defects in design, materials and workmanship, the performance of similar or identical exhaust emissions controls in the C15 engines is relevant and material. Whether Plaintiffs' experience with their C13 engines was caused by driver error and/or failure of maintenance, as Defendant has alleged in its Answer, makes similar the cause of similar failures, unrelated to driver error and maintenance, in the C15 exhaust emission controls relevant and material. Similarly, the adequacy or inadequacy of remediation by CAT, and or modifications in design, or equipment, in the C15 exhaust emission controls is relevant and material to the causes of failures, and adequacy of remediation in the C13 engines.

**3. Defendant Has Propounded Rule 34 Second Supplemental Requests For Production, Rule 36 Request To Admit, and Rule 33 Second Supplemental Interrogatories Seeking Discovery From Plaintiffs On The C15 Engines While Refusing To Provide That Discovery To Plaintiffs**

On December 11, 2013, Defendant propounded to each Plaintiff Rule 34 Second Supplemental Requests For Production, Rule 36 Request To Admit, and Rule 33 Second Supplemental Interrogatories, all of which relate to the relationship of the C13 to the C15 engines, and, in particular, the Rule 36 Request to Admit requires the discovery regarding the C15 engine that Defendant refuses to provide. (*See, e.g.,* Exhibits 2, 3, and 4 attached hereto.) The Plaintiffs' response to Defendant's discovery is due January 12, 2013 and, as such, Plaintiffs request that its Responses to Defendant's discovery be stayed pending Defendant's production of the discovery requested.

WHEREFORE, Plaintiffs respectfully request the Court deny Defendant's Motion For Reconsideration and stay Plaintiffs' Responses to Defendant's Rule 34 Second Supplemental Requests For Production, Rule 36 Request To Admit, and Rule 33 Second Supplemental Interrogatories pending Defendant's production of discovery, and for such other and further relief as the court deems just under the premises.

Dated: January 6, 2014                     Respectfully submitted,

                                                            s/Theodore J. Leopold
Theodore J. Leopold (Florida Bar No.: 705608)
Email: tleopold@leopold-law.com
Leslie M. Kroeger (Florida Bar No.: 989762)
Email: lkroeger@leopold-law.com
LEOPOLD LAW, P.A.
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone:  (561) 515-1400
Facsimile:   (561) 515-1401

Richard J. Burke *(admitted pro hac vice)*
Email: Rich@complexlitgroup.com
COMPLEX LITIGATION GROUP LLC
1010 Market Street, Suite 1340
St. Louis, MO 63101
Telephone: (847) 433-4500
Facsimile: (847) 433-2500

Jamie E. Weiss *(admitted pro hac vice)*
Email: Jamie@complexlitgroup.com
Zachary Jacobs (*admitted pro hac vice*)
Email: Zachary@complexlitgroup.com
COMPLEX LITIGATION GROUP LLC
513 Central Ave., 3rd Floor
Highland Park, IL 60035
Telephone: (847) 433-4500
Facsimile: (847) 433-2500

Kevin T. Hoerner *(admitted pro hac vice)*
Email: KTH@bphlaw.com
BECKER, PAULSON, HOERNER & THOMPSON, P.C.
5111 West Main Street
Belleville, Illinois 62226
Telephone: (618) 235-0020
Facsimile: (618) 235-8558

Jonathan Shub *(admitted pro hac vice)*
Email: JShub@SeegerWeiss.com
SEEGER WEISS LLP
1515 Market Street, Suite 1380
Philadelphia, Pennsylvania 19102
Telephone: (215) 553-7980
Facsimile: (215) 851-8029

Steven R. Jaffe
Email: SJaffe@pathtojustice.com
Mark Fistos
Email: MFistos@pathtojustice.com
FARMER, JAFFE, WEISSING, EDWARDS
 FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
Telephone: (954) 524-2820
Facsimile: (954) 524-2822

*Attorneys for Plaintiffs*

8

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically.

    s/Theodore J. Leopold
    Theodore J. Leopold (Florida Bar No.: 705608)
    Email: tleopold@leopold-law.com
    LEOPOLD LAW, P.A.
    2925 PGA Boulevard, Suite 200
    Palm Beach Gardens, FL 33410
    Telephone: (561) 515-1400
    Facsimile: (561) 515-1401

**SERVICE LIST**

**Gordon James, III, Esq.**
gordon.james@sedgwicklaw.com
**David J. DePiano, Esq.**
david.depiano@sedgwicklaw.com
johnet.grim@sedgwicklaw.com
thana.leary@sedgwicklaw.com;
victoria.horne@sedgwicklaw.com
SEDGWICK, LLP
2400 E. Commercial Blvd., Suite 1100
Fort Lauderdale, FL  33308
Tel.: (954) 958-2500
Fax: (954) 958-2513

**James H. Keale**, **Esq.** (*admitted pro hac vice*)
James.Keale@sedgwicklaw.com
SEDGWICK, LLP
Three Gateway Center, 12th Floor
Newark, NJ  07102
Tel.: (973) 242-0002
Fax: (973) 242-8099

**Kimberly A. Cook, Esq.**
Kimberly.cook@sedgwicklaw.com
SEDGWICK, LLP
9155 S. Dadeland Blvd., Suite 1208
Miami, FL  33156-2737
Tel.: (305) 670-4777
Fax: (305) 670-7007

*Attorneys for Defendants*